UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DANA M. CORIERI,

                                        19-CV-094-MJR
                                        DECISION AND ORDER

                 Plaintiff,

       -v-

ANDREW SAUL,
Commissioner of Social Security,

                 Defendant.

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 23).

Plaintiff Dana M. Corieri brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 14) is granted, the Commissioner's motion (Dkt. Nos. 20, 21) is denied, and the case is remanded.

## BACKGROUND[1]

Plaintiff filed applications for DIB and SSI on August 11, 2015, alleging a disability as of April 1, 2004, due to fibromyalgia, degenerative disc disease, spinal herniated disc, acid reflux, migraines, hypothyroidism, asthma, attention deficit disorder, and

---

[1] The Court assumes the parties' familiarity with the record in this case.

incontinence.  (Tr. 10, 82, 168-175). [2]  Her claim was initially denied on November 20, 2015.  (Tr. 80-108).  On December 4, 2015, Plaintiff filed a timely written request for a hearing.  (Tr. 111-112).

On December 7, 2017, a hearing was held before Administrative Law Judge ("ALJ") Steven Cordovani, at which Plaintiff and her attorney appeared. (Tr. 28-79).  A vocational expert also appeared.

On March 8, 2018, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 10-18).  That decision became final when on November 30, 2018, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.      *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record,

---

[2] References to "Tr." are to the administrative record in this case.

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether

such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed

- 4 -

in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

Preliminarily, the ALJ determined that the Plaintiff meets the insured status requirements through June 30, 2007. (Tr. 12).  At step one of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial activity since April 1, 2004, the alleged onset date.  *Id.*  At step two, the ALJ concluded that Plaintiff has the following severe impairments: asthma and allergic rhinitis; degenerative disc disease of the neck and lower back; degenerative joint disease of the right shoulder, status post-surgical repair; and migraines.[3] (Tr. 12-13).  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 14).  Before proceeding to step four, the ALJ assessed Plaintiff's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except perform frequent reaching; no overhead work; occasional pushing and pulling with right arm; frequent climbing of ramps and stairs; occasional kneeling, crouching, crawling and bending; no ladders, ropes or scaffolds; no work around loud noise, unprotected heights, moving mechanical parts; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants.

(Tr. 14-16).  Proceeding to step four, the ALJ found that Plaintiff has no past relevant work.  (Tr. 16).  At step five, the ALJ found that, considering Plaintiff's age, education,

---

[3] At step 2, the ALJ also found that Plaintiff did not have a severe impairment prior to her last-insured date of June 30, 2007, and therefore is not entitled to DIB.  (Tr. 13).  Plaintiff does not appeal this finding.

work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, namely Deli Clerk, Cashier II, and Cafeteria Attendant. (Tr. 17). Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 18).

IV.   _Plaintiff's Challenges_

Plaintiff argues that the case must be remanded, because: (1) the ALJ failed to evaluate properly Plaintiff's fibromyalgia; and (2) the ALJ's physical RFC determination was not supported by substantial evidence as it relied on a stale medical opinion. The Court agrees.

A claimant may be found disabled under the Act only if she has a medically determinable impairment. _See_ 20 C.F.R. §§ 404.1505(a), 416.905. Such an impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." _Id._ §§ 404.1521, 416.921. If an impairment is not medically determinable, then it cannot be "severe" at step two of the five step sequential evaluation process. _See Keller v. Colvin_, No. 16-CV-6399P, 2017 WL 4112024, at *12 (W.D.N.Y. Sept. 18, 2017).

Social Security Ruling ("SSR") 12-2p sets forth criteria to determine whether a claimant has a medically determinable impairment of fibromyalgia — specifically, a physician must diagnose fibromyalgia, the diagnosis cannot be inconsistent with the other evidence in the case record, and the physician must provide evidence of: (1) a history of widespread pain, at least eleven positive tender points on physical examination, and evidence that other disorders that could cause the symptoms or signs were excluded; or (2) a history of widespread pain, repeated manifestations of six or more fibromyalgia

symptoms, signs, or co-occurring conditions, and evidence that other disorders that could cause these repeated manifestations were excluded. 2012 WL 3104869, at *2-3 (July 25, 2012).

Here, Plaintiff was diagnosed with fibromyalgia by her treating providers and by consultative physician, Dr. Donna Miller, D.O. (Tr. 754, 823, 904, 918, 923, 931, 937, 973, 986). Examinations consistently revealed trigger points. (Tr. 569, 578, 609, 651, 663, 672, 693, 754, 823). She was prescribed Pamelor and Gabapentin for her fibromyalgia symptoms. (Tr. 904, 918, 923, 931, 937, 973, 986).

At step two, the ALJ acknowledged that Plaintiff had been diagnosed with fibromyalgia, but nevertheless concluded her fibromyalgia was not a medically determinable impairment because the evidence of record did not exclude other possible causes of her symptoms and therefore did not meet the SSR 12-2p criteria. (Tr. 13). The ALJ failed, however, to acknowledge that the evidence in the record included a thorough discussion of the different causes of Plaintiff's symptoms.

The assessment of Plaintiff's pain management treating physician, Dr. Daniel Salcedo, M.D., specifically distinguishes the different causes of Plaintiff's pain. He noted that she had generalized pain that was typical of fibromyalgia, but also noted she had pain at her spine. (Tr. 822-823). He then diagnosed her with fibromyalgia and explained why he believed occipital neuralgia was the cause of her headaches and spondylosis/facet syndrome was the cause of her spinal and joint pain. (Tr. 823). This thorough assessment, at least arguably, served as an exclusion of other possible causes of her pain.

SSR 12-2p directs an ALJ to take additional steps, such as recontacting a claimant's treating physicians, when the record lacks sufficient information to determine whether the claimant has a medically determinable impairment of fibromyalgia. 2012 WL 3104869, at *4. Under the facts and circumstances present here, before rejecting Plaintiff's fibromyalgia as a medically determinable impairment, the ALJ should have recontacted Plaintiff's treating physicians to determine whether her fibromyalgia satisfied the criteria set forth in SSR 12-2p. The ALJ's failure to do so was error. *See Cooper v. Comm'r of Soc. Sec.*, 17-CV-1058-MJR, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019).

This error was not harmless, because an ALJ will credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable. See SSR 12-2p, at *5. By concluding Plaintiff's fibromyalgia is not a medically determinable impairment, the ALJ had no basis to credit her statements regarding her fibromyalgia-related symptoms in the remainder of his decision. *See Cooper*, 2019 WL 1109573, at *5 (citing *Keller*, 2017 WL 4112024, at *12) ("[T]he step two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable.")).

In sum, the ALJ failed to evaluate properly Plaintiff's fibromyalgia. He found it was not a medically determinable impairment, without recognizing that alternative causes of her pain had already been excluded and without attempting to recontact her treating providers for additional information. Remand is therefore warranted.

The ALJ also erred in this case because the only medical opinion he relied on in making his determination of Plaintiff's physical RFC was stale. An ALJ may not rely on

medical source opinions that are stale when determining the claimant's RFC. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (citing *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (remanding for staleness when ALJ relied on consultative examination that occurred prior to multiple surgeries over five years)); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015); aff'd, 652 F. App'x 25 (2d Cir. 2016). A medical opinion may be stale if it is remote in time and does not account for a claimant's deteriorating condition. See, e.g., *Hawkins v. Colvin*, 15-CV-6394, 2016 WL 6246424, at *3 (W.D.N.Y. Oct. 26, 2016) ("the consultative medical examination report was 'stale' at the time of the ALJ's decision, insofar as the report was issued prior to plaintiff's degenerative disc disease becoming symptomatic."); *Girolamo v. Colvin,* 13-CV-06309, 2014 WL 2207993, at *7 (W.D.N.Y. May 28, 2014) (ALJ improperly relied upon opinions of consulting physicians rendered "prior to [p]laintiff's second surgery in 2011 and the related diagnostic testing associated therewith."). In considering whether a medical opinion is stale, courts have frequently pointed to surgeries occurring subsequent to the medical opinion as evidence of the claimant's deteriorating condition. See, e.g., *Biro*, 335 F. Supp. 3d at 472 ("The Court finds the ALJ's consideration of Plaintiff's knee impairment unsupported by substantial evidence. First, [the consultative examiner's] opinion, which was rendered nearly five years before the ALJ's decision and before Plaintiff's September 2013 knee injury and two subsequent surgeries, was stale and not based on the complete medical record."); see also *Jeffords v. Comm'r of Soc. Sec.*, No. 17-CV-1085-MJR, 2019 WL 1723517, at *7 (W.D.N.Y. Apr. 18, 2019) (remanding for staleness when ALJ relied "almost exclusively, on medical opinions ... prior to plaintiff's 2013 spinal surgery and 2014 fall");

*Morales v. Comm'r of Soc. Sep.*, No. 17 CV-341-FPG, 2019 WL 1109572, at *6 (W.D.N.Y. Mar. 11, 2019) (remanding where ALJ relied on consultative examiner's opinion that did not address "multiple hernia repair surgeries" and was rendered before two additional surgeries); *Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept. 27, 2017) ("A stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding.").

Here, the only medical opinion relied upon by the ALJ in determining Plaintiff's physical RFC (that she could perform light work with some exceptions) was that of the consultative examiner, Dr. Miller, following a single examination of Plaintiff on November 12, 2015, over two years before the ALJ's decision. (Tr. 751-755). The ALJ assigned both "great" and "significant" weight to Dr. Miller's opinion. (Tr. 16). The ALJ acknowledged, however, that Plaintiff's migraines worsened and that she underwent shoulder surgery following Dr. Miller's opinion. *Id.*

The ALJ erred in relying on the opinion of Dr. Miller as it was stale. The record shows that Plaintiff's condition deteriorated subsequent to Dr. Miller's opinion. Specifically, her right shoulder condition, cervical spine, lumbar spine, and migraines worsened after the examination. During Dr. Miller's November 2015 examination, Plaintiff reported having one or two migraines a week, and she exhibited full range of motion in her cervical spine and shoulders, and no shoulder or spinal pain or tenderness was noted. (Tr. 752-754). Subsequent treatment notes, however, revealed deterioration, which resulted in a new surgery.

Subsequent examinations consistently revealed tenderness of Plaintiff's right shoulder, cervical spine, and lumbar spine, limited and/or painful range of motion, and

positive orthopedic testing. (Tr. 795, 807, 810, 815, 823, 867, 895, 1167-1168).  Her right shoulder symptoms were persistent and ultimately required surgery in June 2016.  (Tr. 885-887).  After surgery, she continued to report pain, and external and internal shoulder rotation remained at 0 degrees.  (Tr. 823, 892, 895).  Plaintiff's migraines worsened and required treatment with various medications including triptans, nerve pain medication, NSAIDs, and anticonvulsant.  Subsequent diagnostic imaging also revealed worsening. The correlating lumbosacral spine x-ray for Dr. Miller's examination revealed moderate straightening but "relatively well maintained" height of the vertebral bodies and intervertebral disc spaces.  (Tr. 756).  However, a lumbar spine MRI conducted on June 13, 2017 revealed multilevel degenerative changes of the lumbar spine most significant at the L4-5 level with mild central canal and moderate right neural foraminal narrowing and mild stepladder retrolisthesis at the L3-L4 and L4-L5 levels, with findings including abutment of the right L4 nerve root and right transcending S1 nerve root.  (Tr. 834-835). In April 2017, Plaintiff's treating providers eventually provided her a permanent placard for a handicap parking permit due to her worsening conditions. (Tr. 931).

Because Dr. Miller's opinion was stale, the ALJ could not rely on it. Consequently, because Dr. Miller's opinion was the only medical opinion upon which the ALJ relied, there is now a gap in the record necessitating a remand. See Smith v. Saul, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (rejecting medical opinion left gaps in the record triggering duty to develop the record). "As a general rule, where the transcript

contains only diagnostic evidence and no opinion from a medical source about functional limitations . . ., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Nanartowich v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6096P, 2018 WL 2227862, at *11–12 (W.D.N.Y. May 16, 2018) (quoting *Gross v. Astrue*, No. 12-CV-6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014)); see also *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support the ALJ's finding ... the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

## CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. Nos. 20, 21) is denied, and this case is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      August 10, 2020
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge